1

1          IN THE UNITED STATES DISTRICT COURT

2             FOR THE DISTRICT OF NEW MEXICO

3

4    UNITED STATES OF AMERICA      )
                                   )
5    vs.                           )    No. CR 18-3323 JCH
                                   )
6    JANSEN PESHLAKAI              )

7

8

9

10

11

12              TRANSCRIPT OF PROCEEDINGS

13        APPEAL OF MAGISTRATE'S DETENTION ORDER

14                 January 28, 2019

15

16

17   BEFORE:  HONORABLE JUDGE SCOTT W. SKAVDAHL
                 UNITED STATES DISTRICT JUDGE
18

19

20

21

22       Proceedings reported by stenotype.

23       Transcript produced by computer-aided

24   transcription.

25

1   A P P E A R A N C E S:

2   FOR THE GOVERNMENT:   ALLISON JAROS
                          allison.jaros@usdoj.gov
3                         Office of the U.S. Attorney
                          201 Third Street, Northwest #900
4                         Albuquerque, New Mexico  87103
                          505-346-7274
5
    FOR DEFENDANT:        EDWARD D. BUSTAMANTE
6                         eobatty@hotmail.com
                          620 Gold Avenue,Southwest #200
7                         Albuquerque, New Mexico  87102
                          505-842-9093
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              THE COURT:  United States v. Jensen

2    Peshlakai, Case Number CR-18-3323.

3              MS. JAROS:  Good afternoon, Your Honor.

4              Allison Jaros on behalf of the

5    United States.

6              THE COURT:  Good afternoon.

7              MR. BUSTAMANTE:  Good afternoon, Judge.

8              Edward Bustamante for Mr. Peshlakai, who is

9    present.

10             THE COURT:  I'm sorry, Counsel.  Could you

11   say your name again?

12             MR. BUSTAMANTE:  Edward Bustamante.

13             THE COURT:  Mr. Bustamante.

14             Have we -- have you been before me before?

15             MR. BUSTAMANTE:  I believe about two years

16   ago, Judge.

17             THE COURT:  That's what I thought.  I

18   thought I recognized the name.

19             And, Ms. Jaros, you look familiar as well.

20             MS. JAROS:  I don't believe I've appeared

21   before you, Your Honor.

22             THE COURT:  All right.  Well, welcome.

23             This matter is before the Court on a review

24   of -- or appeal of a magistrate judge's detention

25   order in this case.

4

1            I have reviewed the appeal, as drafted by

2    defense counsel, and I have reviewed the

3    United States' response.  And I'll afford counsel the

4    opportunity to make any additional oral argument, and

5    then I will turn to the issues of ruling in this

6    matter.

7            I would note, for purposes of you being

8    comfortable with me understanding what the issues

9    are, the defendant has been charged by way of an

10   indictment with second-degree murder for the alleged

11   death of a John Doe, who was a passenger in a truck

12   who had stopped to intercede between the defendant

13   and his wife.

14           After he did that, she allegedly got into

15   the passenger's truck, and the defendant then rammed

16   the truck and ultimately is alleged to have run over

17   the John Doe, who later died that day from the

18   injuries suffered.

19           The defendant also has, I believe in 2013,

20   suffered from severe traumatic brain injuries and is

21   currently under treatment and care and various

22   medications.  That is part of the issues raised in

23   the appeal.

24           He also has a history of alcohol use and

25   abuse.  And on the date in question, or the date of

1  the alleged murder, was under the influence of

2  alcohol.

3          And those are the essential facts that I

4  understand.

5          Mr. Bustamante?

6          MR. BUSTAMANTE:  Judge, prior to argument,

7  I have a request for the Court.

8          As you can see, my client does have a

9  fairly severe scar on the right side of his head.

10 And if the Court could allow him to have a seat,

11 Judge, at this front chair.  He also has a hard time

12 hearing.  I'm not sure it's related to the injury,

13 but he expressed that.

14         So if he could please have a seat.

15         THE COURT:  He can have a seat.  We can

16 also provide him with a set of headphones so he can

17 hear.

18         We'll turn the volume up.

19         MR. BUSTAMANTE:  Thank you, Judge.

20         THE COURT:  Unfortunately, the interpreter

21 left with the headphones.

22         So can you hear okay, sir?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.

25         Mr. Bustamante?

1           MR. BUSTAMANTE:   May it please the Court.

2           Judge, on December 13th, the magistrate did

3    listen to argument and decided to detain

4    Mr. Peshlakai.  But she did express some concerns

5    that if Mr. Peshlakai's medication was disrupted or

6    he was not receiving proper medication, Judge, she

7    would certainly consider amending conditions.

8           And the concern I have, Judge, is that I

9    don't think the Court was privy to the government's

10   argument at that time.  But the government felt that

11   because Mr. Peshlakai -- and I think it's a given,

12   Judge, that Mr. Peshlakai is in a fairly fragile

13   state -- the question is:  How are we going to deal

14   with that fragile state as the case continues?

15          But the magistrate did state, Judge, that

16   if he's not receiving medication properly, she would

17   certainly consider amending conditions of release.

18          My concern is, Judge, that the government's

19   argument at that time was, Look.  If he's that

20   fragile, the best place for him is in a correctional

21   facility, where he will -- we will all ensure he

22   receives his medication.

23          I'm asking the Court, Judge, to sort of be

24   wary about that argument and consider allowing him to

25   go to La Posada.

1          And I ask the Court to be wary about that,

2   Judge, because I agree that the facility in Milan

3   will likely get him his medication.  But it is first,

4   Judge, and foremost, a correctional facility.

5          At this point, Judge, he's not in a medical

6   facility.  If he was in Illinois being evaluated, we

7   certainly would not raise a whisper about whether he

8   was getting proper medication.

9          But my concern is, Judge -- and I've had

10  this conversation with Mr. Peshlakai -- is that he's

11  stated to me, Judge, and I state this by way of

12  proffer, that the only medication he now is

13  receiving, Judge, and has continued to receive since

14  his arrest, Judge, is an anti-seizure medication.

15         Because of that, Judge, and because he's

16  not receiving the battery of medications, he says

17  that his head pressure continues to increase.  He's

18  feeling more and more fatigued.  He's having a hard

19  time remembering things.

20         My other concern is, Judge, that because

21  it's a correctional facility, they get him his

22  medication when they get to him.  And I think, Judge,

23  it's equally important for someone in my client's

24  fragile condition, that he receive the medication at

25  a set time every day.  And it's just not happening in

1  the facility.

2          I've talked with him.  He says sometimes

3  they are early, sometimes they are late.  Sometimes

4  he's so fatigued that he has to go to sleep because

5  of the pain, and he's unable to receive the

6  medication at all.

7          They ask him, Why weren't you there?

8          He said, Well, I just couldn't wait until

9  you got here.

10          So I think those concerns the magistrate

11  expressed are ongoing, Judge.  So we're asking the

12  Court to allow him to go to La Posada.

13          Judge, my client did sign a release to get

14  his medical records to me.  Unfortunately again,

15  because it's a correctional facility, I spoke to them

16  about that.  I told them it's urgent that I get these

17  documents.

18          And they stated, Well, we have 30 days to

19  comply, and we'll get those to you when we get those

20  to you.  So I'm still waiting.

21          If the Court feels that after I make my

22  argument, after the government responds, I would ask

23  the Court possibly to consider holding your decision

24  in abeyance until we get those medical records.  And

25  I'm assuming we'll confirm whether he's receiving one

1    medication or a battery of medications, Judge.

2              THE COURT:  Let me ask you this before we

3    go further.

4              In terms of La Posada, it's my

5    understanding that they were not -- given the

6    circumstances and the conditions of the defendant,

7    they were not willing to accept him.

8              Has that changed?

9              MR. BUSTAMANTE:  Well, Judge, I think they

10   were -- I don't think they said they would refuse to

11   accept him.  I think they said, Look.  We're just not

12   equipped to do that.

13             We're not asking La Posada, Judge, to be

14   his medical guardian.  We're just simply asking

15   La Posada to monitor him, to see whether he's on --

16   drinking alcohol.  If he's drinking alcohol, Judge,

17   that's a fairly easy decision for the Court to put

18   him back into custody.

19             We are asking La Posada to allow his family

20   to bring the medications in, to hold the medications.

21   And when he comes for the medications, that they

22   allow him to have them and then they take custody of

23   the medications.

24             Again, that's all we're asking the Court,

25   Judge.

1          THE COURT:  And my question is:  Are they
2    willing to do that?
3          MR. BUSTAMANTE:  At the last hearing,
4    Judge, I think it was -- they were wary about it.
5    They said, Look.  If he's that fragile, we're wary
6    about it.  I think that's where we left it, Judge.
7          And again, Judge, I would echo that we
8    can't say, Well, the best -- because this person is
9    so fragile, the best place for him is in a
10   correctional setting.  So I think that's sort of
11   letting everyone off the hook, Judge.
12         So I'm asking the Court to set conditions.
13   If the Court feels a GPS monitor is appropriate, we
14   certainly don't object to that.  And if La Posada
15   steps up and says, We refuse to do it, you know, we
16   can continue to litigate things.
17         But at this point, Judge, I'm asking the
18   Court to set those reasonable conditions.
19         The government felt he was a danger, Judge.
20   If you order him to La Posada, place him on a GPS
21   monitor, he will not have access to a vehicle.  He
22   will in no way be able to drive.  And that is sort of
23   the crux of this matter, Judge.
24         I know the Court laid out some bare facts
25   about what occurred.  But the biggest concern, Judge,

1   I think for the government, the community, and the

2   Court, is that if he doesn't have access to a

3   vehicle, I don't think he's a danger.

4           He's certainly not a flight risk, Judge,

5   given his medical condition, given the fact that he

6   has family in Farmington, has a wife in the immediate

7   area who will be of some support to him, Judge.

8           So I am asking, Judge, that the Court

9   consider setting conditions of release.  It would be

10  a much better argument, Judge, if I had those medical

11  records for you, to show you that all the medication

12  he is receiving is the anti-seizure medication.  I

13  don't have those.

14          But my client has said to me, That's the

15  only medication I'm receiving.

16          So I'm asking the Court that we just

17  proceed, that that is accurate information.  I don't

18  see why he would -- it's not self-serving in any way,

19  Judge, for him to exaggerate what's going on at the

20  facility.

21          So we are asking, Judge, to allow him to be

22  released to La Posada.

23          Judge, this occurred in -- the allegations

24  and the events occurred in mid July.  The case went

25  to the grand jury in mid October.  So there was a

1   period of time where my client was in the community

2   unsupervised and he did not commit further crimes.

3   In fact he did the responsible thing, by retaining

4   counsel.  He retained counsel, and that counsel was

5   in contact with the government.  I think that's how

6   the government became alerted that he has a closed

7   head injury and is in fragile condition.  So there

8   was contact, Judge.

9            And from the criminal complaint, I

10  believe -- or maybe it was the pretrial services

11  report -- it was clearly indicated that that prior

12  private counsel was working with federal authorities

13  to arrange a turn-in date, when the case went from

14  the grand jury with their charge.

15           So he wasn't fleeing, Judge.  He had

16  counsel.  He is in that fragile state.

17           So we're asking the Court, Judge, to set

18  reasonable conditions for him.  And if that doesn't

19  work, Judge, it doesn't work.  But I think, given the

20  fact that he won't have a vehicle, La Posada would be

21  monitoring not his medications, but to see if he's

22  drinking, it is a reasonable first step, Judge.

23           And my guess is, Judge, in the near future,

24  either in custody or out of custody, there will be a

25  mental health evaluation for my client to determine

1  multiple things, including if he can proceed in this

2  matter.

3            So that's our request.

4            THE COURT:  Thank you, Mr. Bustamante.

5            Ms. Jaros?

6            MS. JAROS:  Your Honor, the government is

7  requesting that the Court uphold the magistrate

8  judge's determination that the defendant would, if

9  released, be both a danger to the community and a

10 risk of nonappearance.

11           The government isn't seeking detention

12 based on the defendant's health condition, about

13 which the government has very limited information.

14           The government is seeking detention based

15 on the nature of the offense, the facts of which the

16 Court has summarized.

17           I would note that the government has the

18 case agent, Agent Lance Romney, present, if the Court

19 has any additional questions about the facts.

20           The government is also seeking detention

21 based on the defendant's criminal history, which

22 confirms that he is a danger to the community.

23           He has a history of alcohol abuse that

24 predates his head injury.

25           He also has a violent criminal history.

1    This goes beyond just drinking and driving issues.

2    He's been arrested for aggravated battery, battery on

3    a household member, and domestic assault.

4           In 2016 he was convicted of assault and

5    battery with a dangerous weapon.

6           And then as the magistrate judge noted, he

7    also has a history of failing to appear and violating

8    his probation, which raises a risk -- a concern about

9    risk of nonappearance.

10           Given these facts, the government doesn't

11    believe he's a good candidate for release to the

12    halfway house, no matter what his medical condition

13    was.

14           It's the government's understanding,

15    however, that La Posada was not willing to accept him

16    as a resident.  If there's some question about that,

17    maybe pretrial services could address it.  But that

18    was my understanding at the time of the detention

19    hearing.

20           The government doesn't know of any other

21    suitable placement for the defendant and is

22    requesting detention.

23           THE COURT:  All right.

24           Mr. Bustamante, it's your motion.  I will

25    hear from you last.

1          MR. BUSTAMANTE:  I just want to reiterate,

2  Judge, that the allegations are from July.  I think

3  we'll concede that everyone at the scene was drinking

4  heavily.  I argued this to the magistrate.

5          Second-degree murder is, I think, a

6  charging decision.  I think it is somewhat

7  subjective.  My guess is this case is in the running

8  for an involuntary manslaughter, but it will be

9  played out at some other time, Judge.

10          But he was out in the community for those

11  two months, was acting responsibly, arranged to turn

12  himself in, so we're asking the Court to set

13  conditions.

14          THE COURT:  Well, a couple of things with

15  regard to this Court's review.

16          As set forth in United States versus Mobley

17  725 Phoenix 441, 2017, a December 19, 2017, Tenth

18  Circuit decision, the Bail Reform Act, Section 3142,

19  sets out the framework for evaluating whether

20  pretrial detention is appropriate.

21          In general, persons charged with a crime

22  are not detained.  It's the United States versus

23  Salerno, 481 US 739 at 755.

24          But a defendant may be -- may be detained

25  pending trial if a judicial officer finds that no

conditions or combination of conditions will
reasonably assure the appearance of the person as
required, and the safety of any other person and the
community, under 18 USC Section 3142(e)(1).

A judicial officer may make such a finding
only after holding a hearing under Section 3142(f).
See United States versus Cisneros, C-I-S-N-E-R-O-S,
328 F.3d. 610 at 616, Tenth Circuit 2003.

The government bears the burden of proving
risk of flight by a preponderance of evidence, and
dangerousness to any other person or the community by
clear and convincing evidence.

Under 3142(g), the judicial officer must
consider four factors as part of the evaluation.

One, the nature and the circumstances of
the offense charged, including whether the offense
involves a minor victim.

Two, the weight of the evidence against the
person.

Three, the history and the characteristics
of the person.

And four, the nature and seriousness of the
danger to any person or the community that would be
posed by the person's release.  See 3142,
Section (g).

1          A detention order must include written
2    findings of fact and a written statement of the
3    reasons for the detention.  See Section 3142(i).
4          But a reviewing district court can state
5    its reasons for detention in writing or orally on the
6    record.  A district court conducts a de novo review
7    of the magistrate judge's order.  See Cisneros at 616
8    at Footnote 1.
9          This Court would review the underlying
10   findings of fact for clear error, as noted in
11   Cisneros.
12         I have reviewed the detention order and in
13   this matter that detention order notes that -- one
14   moment.  I've got my electronic version I need to
15   find.
16         In this case, the order of detention, which
17   is UCF Document Number 12, notes that after
18   considering those factors under 3142(g) and the
19   information presented during that detention hearing,
20   the magistrate judge determined that the government
21   has proven by clear and convincing evidence that no
22   condition or combination of conditions of release
23   will reasonably assure the safety of any other person
24   in the community; and by a preponderance of the
25   evidence that no condition or combination of

1   conditions of release will reasonably assure the

2   defendant's appearance as required.

3            In addition to those findings made on the

4   record -- I've reviewed that record -- the reasons

5   for detention include prior criminal history.  As

6   noted in this case, the defendant has prior criminal

7   history, most of which involves alcohol, and which

8   also involves violence, battery, assault, and those

9   types of things.

10           There's a history of violence for use of

11  weapons, which is also checked.

12           There's a history of alcohol or substance

13  abuse, which was also checked.

14           There is the prior failure to appear in

15  court as ordered.

16           I believe those were for traffic

17  violations.  There may be a DUI.

18           And there's prior violations of probation,

19  parole, or supervised release.

20           In the end, applying the standards that

21  this Court must, in reviewing the order of detention

22  as well as the transcript from that detention

23  hearing, the Court would find that the magistrate

24  judge properly considered, applied the proper legal

25  standards, made factual findings that appear to be

19

1    not in clear error, and found that there is --

2    finding the proper standard of burden of proof --

3    that there is clear and convincing evidence that no

4    conditions or combination of conditions could

5    reasonably assure the safety of any other person in

6    the community.

7              Part of that involved the concerns of not

8    having any kind of facility in which he could be

9    placed.

10             There was also a letter that was, I

11   believe, attached from his neurologist or from his

12   treater, indicating his need for care, which required

13   La Posada to indicate that they did not believe that

14   they could provide a sufficient care.

15             And given that, given his alcohol use and

16   the risks that he presented, if we were all without

17   cars and vehicles, it might be one thing.  But I have

18   concerns that that would not eliminate, in this

19   circumstance, the potential risk of harm.

20             There's also the consumption of alcohol

21   that has continued to have occurred, despite his --

22   his 2013 injuries, and the violence associated with

23   that.

24             So I am more focused on the danger to the

25   community, or safety, as opposed to his risk of

1   nonappearance.  I think that that's less, or

2   certainly mitigated by his self-reporting or

3   self-surrender.

4         But nonetheless, I find that there's more

5   than adequate facts to support the magistrate judge's

6   ruling and detention, given the standards applied

7   under the Tenth Circuit precedent.

8         As to the issue of his medications.  That,

9   to me, appears to be an issue of new facts or

10  circumstances that may justify going back before the

11  magistrate judge for review, because that certainly

12  was a concern.

13        But at this point in time, I -- that would

14  require additional evidence, and I'm not in the

15  position of an evidentiary review, but a review of

16  the record and the evidence that was presented before

17  the magistrate judge.

18        So if those facts have changed, and if you

19  receive those medical records in the 30-day period of

20  time that they now have told you they would get them

21  to you, and they reveal that he's not getting the

22  medications that he needs, then that should be a

23  matter brought to the attention of the magistrate

24  judge for review.

25        Otherwise, the Court would affirm the

1    decision and detention in this matter.

2              MS. JAROS:  Thank you, Judge.

3              MR. BUSTAMANTE:  Thank you, Judge.

4              THE COURT:  Any other matters we need to

5    address in this case, Mr. Bustamante?

6              MR. BUSTAMANTE:  No, Your Honor.  Thank

7    you.

8              THE COURT:  Thank you.

9              And, Ms. Jaros?

10             MS. JAROS:  No, Your Honor.

11             This was my final matter.  May I be

12   excused?

13             THE COURT:  Your first and final, yes.

14             (Proceedings concluded at 3:45 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2

3    I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled

5    matter.  I further certify that the transcript fees

6    and format comply with those prescribed by the Court

7    and the Judicial Conference of the United States.

8

9    Date:  April 16, 2021

10

11                    _____
                      PAUL BACA, RPR, CCR
12                    Certified Court Reporter #112
                      License Expires:  12-31-21
13

14

15

16

17

18

19

20

21

22

23

24

25